## Webster v. Commonwealth.

(Decided February 28, 1928.)

### Appeal from Grant Circuit Court.

1. Homicide.—Where there was evidence that one of defendants called codefendant out of store to assist him, and codefendant went to assistance, and another joined them, taking loaded shotgun out of car, and there was evidence that they were acting in concert, and that all three went up road for hostile purposes, held that instruction on conspiracy was warranted, since conspiracy might have been inferred from circumstances.

2. Criminal Law.—Statement made by codefendant immediately after killing that "I have killed a man out there, but don't say anything about it," to first person he met after shooting, held properly admitted as res gestae against accused, in prosecution for murder.

3. Criminal Law.—Statements made subsequent to shooting by codefendants, when they were arrested, or thereafter, held not admissible against accused, in prosecution for murder, and admissible only for purpose of affecting credibility of codefendants as witnesses.

4. Criminal Law.—In prosecution for murder, introduction before jury of clothing of dead man, over objection of accused, where there was no proof that clothing was introduced before jury in same condition as it was in on night of homicide, held error, since clothing was used to show man who was shot had hands up at time, and proof for accused tended to show deceased was firing pistol at time when shot.

5. Criminal Law.—In prosecution for murder, cross-examination of codefendant, showing conviction resulted from indictment under which he and accused were jointly indicted, held error; conviction being proper only as affecting credibility as witness.

6. Homicide.—Where parties were jointly indicted for murder, instruction by which court told jury that they should acquit accused if he shot deceased when he was then in danger of death or great

bodily harm, but not giving him right to defend codefendants, held error.

F. A. HARRISON for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing

J. D. Webster, his brother, Carl Webster, and his cousin Oval Webster were indicted in the Grant circuit court for the murder of Ed Mire. On the trial of J. D. Webster he was found guilty of manslaughter, and his punishment was fixed at two years in the penitentiary. He appeals.

The Websters lived near Folsom. On Christmas Eve, 1924, about 7:30 p. m., they drove into Folsom in a Ford car, and stopped at the store of the Folsom Supply Company. Carl then jacked up the car, and went to work to fix the tire, which was flat. While he was at work on the tire, J. D. went into the store, bought some apples, and perhaps some other small things. He had a jug of whisky, out of which he gave drinks to one or two people. He and Oval then left this store, he having the jug of whisky under his coat, and started up to Petit's store, about 150 yards away, but put down the jug about 20 feet from the pond, which was about 100 yards away. When they got to Petit's store, J. D. bought some trinkets for his children. Oval played on a banjo, and did some dancing. They then left there, returning to the first store. J. D. went in the store. Carl had found out by that time that they had to have a new tube, and J. D. was trying to buy the tube in the store. About this time Oval came to the door, and hollered for J. D. to come out there, that two out there were trying to run over him. J. D. then left the store, and he and Oval went in the direction of the other store. Some loud talking followed, but nobody heard the words. Carl took a shotgun out of the car and followed them. There were two shotguns in the car.

About the time that the Websters reached Folsom, Earl Smith, Gene Smith, J. P. Elliston, Robert Beach, and Ed Mire walked in from the opposite direction. When they got to the Petit store Elliston and Beach stopped there. The two Smiths and Mire went on; Mire saying that he was going to a Christmas tree given at the

church, about a quarter of a mile away. To go to this church he should have turned to the left about 50 feet south of the Petit store.

Shortly after J. D. Webster left the supply store above stated, a loud report was heard. Some of the shot struck the oil pump in front of the Petit store and glanced against the windows. Petit went to the door. He could see the bulk of some men in the road, but he could not see who they were, as it was dark. J. D. Webster and Earl Smith came in the store; J. D. saying he was shot, and taking out his pistol to show that it had not been fired. After staying there some minutes, and saying that Ed Mire had been shot, they went out, and brought him in. He was breathing, but died in a few minutes. He was shot in the right side with a shotgun, probably at close range. The next morning at the point where his body lay, some 50 feet beyond the turn off to go to the church, and near the pond on the side of the road, there was a pool of blood on the ground, and on the opposite side of the road there were some mason jars that had had whisky in them, and a bottle partially filled with whisky. To the south of where the body was three empty cartridges were picked up, of the size used in Mire's pistol, which was lying by the side of him when he was found, and south of these were two shotgun shells.

J. D. and Oval Webster were considerably under the influence of whisky. Two witnesses testify to hearing some one in the dark say, twice, "Hands up," before the shots were fired, and Earl Smith testifies that J. D. Webster was standing by the side of him talking when the shots were fired and said, "I am shot." He also testified that J. D. said, "Let's see who it is that is shot," when they passed the body of Mire, and Smith said, "No; let's go on and see about you first." J. D. was shot in the arm; the ball passing just under the skin. Carl was also slightly wounded on the wrist, but the skin was not broken.

The above are the facts as shown by the proof for the commonwealth. On the other hand, the defendant denied that Oval told him that anybody was trying to run over him. He said that he met Oval at the door of the supply store, and he and Oval started up the road to the Pettit store to buy a tube, and, as they went, met Gene and Earl Smith, and, while they were talking, a pistol began to fire out in front of him. He was shot through the arm, but did not do any shooting, and that

he did not know who was doing the shooting or why. Oval gave similar testimony, and Carl testified that, when the man began shooting, he shot at the man with a shotgun. The proof for the defendant discloses no other explanation of the difficulty.

It is earnestly insisted for the appellant that no instruction on conspiracy should have been given. But a conspiracy may be inferred from the circumstances. If Oval called J. D. Webster out of the store to assist him against two who were running over him, and J. D. went to his assistance, and if Carl, when they passed him, took a loaded shotgun out of the car and joined them, this was some evidence that all were acting in concert, and all three went up the road for hostile purposes. J. D. had taken his pistol out of the car, and, while the proof for the defendant is otherwise, some circumstances indicate that Oval also took a shotgun out of the car.

It is earnestly insisted that what Oval said after the shooting was not competent as evidence against J. D. Webster. There was proof that Oval said, as he came back to the store after the shooting, "I have killed a man out there, but don't say anything about it." This was immediately after the shooting, and was so connected with it, being said to the first person he met after the shooting, that it was properly admitted as res gestae. L. & N. R. R. Co. v. Shaw, 53 S. W. 1048, 21 Ky. Law Rep. 1041; Roberts v. Louisville Railway Co., 168 Ky. 230, 181 S. W. 1131; Norton v. Winstead, 218 Ky. 488, 291 S. W. 723.

But the statements that were subsequently made by Oval and Carl Webster, when they were arrested or thereafter, or what they then did, should not have been admitted as evidence against the defendant, and, if such statements were introduced to contradict anything they testified to on the trial, the jury should be admonished that the testimony was only competent so far as it might affect their credibility.

The commonwealth introduced before the jury the clothing of the dead man, over the objection of the defendant. The proof showed that the coroner, on the night of the homicide, took the clothing off the body, and turned it over to the dead man's father. The sheriff had possession of the clothing at the trial, and how long he had it did not appear, or who had it before he got it. There was no proof that the clothing introduced before the jury was in the same condition as on the night of the

homicide. This was essential. McCandless v. Commonwealth, 170 Ky. 301, 185 S. W. 1100. The clothing should not have been introduced without such proof. The objection was expressly made on this ground. The court is unable to say that the defendant was not prejudiced by this, because witnesses were examined at length to show from the condition of the clothing that the man who was shot had his hands up at the time, when the proof for the defendant all tended to show that he was firing his pistol at them at the time he was shot.

On the cross-examination of Oval Webster, who was introduced as a witness for the defendant, this occurred:

"You are a codefendant, jointly indicted with J. D. Webster and Carl Webster, charged with the murder of Ed Mire, you are one of the defendants named in the indictment? A. Yes, sir. (To the foregoing question and answer defendant objects; objection overruled; exception.)

"Q. You were tried on that indictment at the last February term of this court, weren't you? (To the foregoing question the defendant objects; objection overruled; exception.) A. Yes, sir.

"Q. And found guilty? A. Yes, sir. (To the foregoing question and answer the defendant objects; objection overruled; exception. The defendant, by counsel, moves to set aside the swearing of the jury and continue the case; motion overruled; exception.)"

It was clearly improper to show on the trial of appellant that Oval Webster, jointly indicted with him, had been convicted under the indictment. The jury may have given no little weight to this fact, for the evidence tended to show that appellant was the leader of the party. He and Oval left the supply store together, and for the same purpose. If Oval was guilty, it might well be concluded that appellant was not innocent. The defendant is entitled to be tried on the evidence against him. The defendant's objection to the evidence should have been sustained. The commonwealth may show that Oval Webster has been convicted of a felony, but only for the purpose of impeaching him as a witness, and, if such evidence is given, the court should tell the jury that it is only to be considered by them on the credibility of the witness.

By instruction 1 the court told the jury, in substance, that, if Oval Webster or Carl Webster killed the deceased, and that J. D. Webster aided or assisted therein, not in his necessary, or to him apparently necessary, defense of himself, or of either Carl or Oval Webster, then they should find him guilty under the indictment. By instruction 3 the court told the jury, in substance, that they should acquit J. D. Webster on the ground of self-defense, if he shot the deceased when he was then and there in danger of death or of some great bodily harm at the hands of the deceased, or it reasonably so appeared to him. But this instruction did not give him any right to defend either Carl or Oval Webster, if either of them was in danger, or if it so appeared to him. The deceased was shot with a shotgun. There was no evidence that J. D. Webster had a shotgun. There was evidence, though, that J. D. Webster was present, aiding and assisting Oval and Carl. But, if he was so aiding and assisting in the necessary defense of Oval or Carl, his rights are the same as if he was acting in defense of himself. On another trial the court will modify instruction 3 so as to present this idea, as indicated in opinion in Oval Webster v. Commonwealth, 2 S. W. (2d) ———, this day decided.

Judgment reversed.